UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

JUSTIN ADAMS,

                                      Case No. 9:18-cv-81028-DIMITROULEAS

    Plaintiff,

v.

OCWEN LOAN SERVICING, LLC,

    Defendant.
_____/

**PLAINTIFF'S RESPONSE AND MEMORANDUM OF
LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

      Plaintiff, Justin Adams (hereinafter, "Plaintiff"), by and through undersigned counsel, pursuant to Rule 7.1(c), Southern District Local Rules, hereby responds in opposition to Defendant, Ocwen Loan Servicing, LLC's (hereinafter, "Defendant"), *Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law* (hereinafter, "Motion to Dismiss") [Doc. 16]. Plaintiff further states as follows:

**I.    PROCEDURAL HISTORY & SUMMARY OF ARGUMENT**

      1.    On July 19, 2018, Plaintiff filed his *Complaint* [Doc. 1] alleging violations by Defendant of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA").

      2.    On September 21, 2018, Defendant filed its Motion to Dismiss challenging Plaintiff's TCPA claim based on ACA International v. FCC, 885 F.3d 687 (D.C. Cir. 2018)—a March 16, 2018, opinion.

      3.    Regarding Plaintiff's TCPA claim, Defendant incorrectly asserts that ACA International changed the scope of the TCPA by "vacat[ing] the FCC's interpretation of an ATDS in its 2003, 2008, and 2015 Orders." See Def.'s Motion to Dismiss, pg. 8 [Doc. 16]. Consequently,

1

Defendant's related contention that the TCPA no longer applies to calls made to collect a debt is flawed and otherwise without merit.

4. Defendant wrongly asserts that Plaintiff failed to allege facts showing Defendant used an automatic telephone dialing system ("ATDS").

5. As further discussed in Plaintiff's incorporated Memorandum of Law:

(a) Plaintiff has sufficiently stated a claim under the TCPA;

(b) The FCC's 2003 *Report and Order*, 2008 *Declaratory Ruling*, the FCC's 2012 *Report and Order*, and **portions** of the FCC's 2015 *Omnibus Declaratory Ruling and Order*, remain undisturbed and binding on this Court;

(c) In vacating portions of the FCC's 2015 Order, particularly as to the Commission's 2015 "effort to clarify the types of calling equipment that fall within the TCPA's restrictions" (where the 2015 interpretation **competed** with certain rulings in the Commission's 2003 Order), the D.C. Circuit returned conditions to the status quo ante ACA International;

(d) The statutory definition of an ATDS includes predictive dialers, including pursuant to the FCC's undisturbed 2003, 2008, and 2012 Orders (and as reaffirmed in the undisturbed portions of the FCC's 2015 Order);

(e) The TCPA governs calls made using an artificial or pre-recorded voice; and

(f) The TCPA applies to calls made to collect a debt, including pursuant to the FCC's undisturbed 2003 Order (and as acknowledged by the D.C. Circuit in ACA International) where it is unlawful to make **any call** using an ATDS or an artificial or pre-recorded message to any wireless telephone number without proper consent.

6.      For the reasons stated above and discussed in greater detail below, this Court should deny Defendant's Motion to Dismiss.

## II.    STANDARD OF REVIEW

A complaint need only contain "a short and plain statement of the claims showing the pleader is entitled to relief." See Fed. R. Civ. P. 8(a). The Supreme Court provided guidance on this standard in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1995 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009). Additionally, the Eleventh Circuit interprets this "liberal pleading standard" as requiring a plaintiff to simply "give the defendant fair notice of what the claim is and the grounds upon which it rests." See Harrison v. Benchmark Elecs. Huntsville, Inc., 593 F.3d 1206, 1214 (11th Cir. 2010).

Further, when evaluating a motion to dismiss, this Court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. Resnick v. AvMed, Inc., 693 F.3d 1317 (11th Cir. 2012). Detailed factual allegations are not required, as the Supreme Court explained, nor does the rule "impose a probability requirement at the pleading stage." See Twombly, 127 S.Ct. 1955 at 1959. Instead, the rule calls for only "enough facts to suggest, raise a reasonable expectation of, and render plausible" the plaintiff's claim. See Watts v. Fla. Int'l Univ., 495 F.3d 1289 (11th Cir.2007) referencing Twombly, 127 S.Ct. 1955. And a claim is facially plausible "when the pleaded factual content allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. 1937 at 1940 citing Twombly, 127 S.Ct. 1955. The standard on a motion to dismiss is not whether Plaintiff will ultimately prevail, but whether the allegations are sufficient to allow Plaintiff to conduct discovery in an attempt to prove the allegations. Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579-80 (11th Cir. 1986).

**III.     ARGUMENT**

  **A.     Plaintiff has Stated a Claim Under the TCPA**

In its Motion to Dismiss, Defendant posits that Plaintiff has failed to state a claim under the TCPA; that proposition, however, is flawed as Plaintiff, in fact, has sufficiently stated a claim under the TCPA. To sufficiently plead a TCPA claim, a plaintiff must allege facts—to be taken as true and construed in the light most favorable to the plaintiff—showing the defendant made calls using an ATDS or artificial or pre-recorded voice to the plaintiff without her/his prior express consent. 47 U.S.C. § 227(b)(a)(A)(iii). As noted, "the standard [set by Fed. R. Civ. P. 8(a)] 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element[s]." See Rivell v. Private Heath Care Sys., Inc., 520 F.3d 1308, 1309-1310 (11th Cir. 2008) citing Twombly, 127 S.Ct. 1955 at 1965.

Plaintiff has alleged sufficient facts to state a claim to relief that is plausible on its face, including ample factual allegations to raise a reasonable expectation that discovery will reveal evidence of Defendant's violation of the TCPA. See Pl.'s Complaint at ¶¶ 22, 24, 25, 26, 27, 29, 30, 31, 32, 35, 36, 37, and 38 [Doc. 1]. More specifically, Plaintiff has alleged that Defendant called his cellular telephone using an ATDS, PTDS, and or an APV (i.e., the term PTDS refer to a predictive telephone dialing system, and APV refers to an artificial or pre-recorded voice), without his consent, and that Defendant intentionally varies the phone numbers making it difficult for Plaintiff to identify each such call. Further, Plaintiff has alleged that he has not been able to gather specifics on each call due to Defendant's incessant calling, and that Defendant is in the best position to ascertain the number and methodology of such calls. France v. Ditech Financial, LLC, No. 8167CV3938T24MAP, 2018 WL 1695405 (M.D. Fla. April 4, 2018) (holding that similar

4

details were sufficient to support the plaintiffs' contention that the defendant used an ATDS). Not only has Plaintiff pled a sufficient claim under the TCPA, but future discovery will certainly reveal evidence related to Defendant's unlawful calls to Plaintiff using an ATDS and/or an artificial or pre-recorded voice.

Finally, the basic principle of the "liberal pleading standard," as discussed above, is simply to "give the defendant fair notice of what the claim is and the grounds upon which it rests." See Harrison, 593 F.3d 1206 at 1214. Defendant, having filed a seventeen (17) page Motion to Dismiss, making arguments in relation to why Defendant, incorrectly as it may be, is not subject to the TCPA for the calls alleged in Plaintiff's Complaint, clearly has been given such "fair notice of what the claim is and the grounds upon which it rests." Id. Therefore, this Court should deny Defendant's Motion to Dismiss.

### B. The D.C. Circuit Did Not Vacated the FCC's 2003 and 2008 Orders

After various regulated agencies sought review of the FCC's 2015 *Omnibus Declaratory Ruling and Order*—an order emanating from the Commission's solicited effort to clarify "various aspects of the TCPA's general bar against using automated dialing devices to make uninvited calls"—the D.C. Circuit vacated two challenged aspects of the FCC's 2015 Order. See ACA International, 885 F.3d 687 at 690. Specifically,

> The challenges encompass[ed] four issues addressed by the agency's order: (i) which sorts of automated dialing equipment are subject to the TCPA's restrictions on unconsented calls; (ii) when a caller obtains a party's consent, does a call nonetheless violate the Act if, unbeknownst to the caller, the consenting party's wireless number has been reassigned to a different person who has not given consent; (iii) how may a consenting party revoke her consent; and (iv) did the Commission too narrowly fashion an exemption from the TCPA's consent requirement for certain healthcare-related calls.

Id. at 690-692.

Correspondingly, ACA International opinion vacated only the issues outlined in subsections (i) and (ii), but upheld subsections (iii) and (iv). The D.C. Circuit held that:

> Applying [applicable] standards to petitioners' four sets of challenges **to the Commission's 2015 Declaratory Ruling**, we set aside the Commission's explanation of which devices qualify as an ATDS, as well as its understanding of when a caller violates the Act by calling a wireless number previously held by a consenting party but reassigned to a person who has not given consent. We sustain, however, the Commission's ruling that a party can revoke consent through any reasonable means clearly expressing a desire to receive no further calls or texts, and we also uphold the scope of the Commission's exemption for time-sensitive, healthcare-related calls.

Id. at 695 (emphasis added).

Germane to the instant Motion to Dismiss is the vacatur of the Commission's 2015 "effort to clarify the types of calling equipment that fall within the TCPA's restrictions." Id. In the FCC's 2015 Order, "[t]he Commission reaffirmed prior orders deciding that "predictive dialers"— equipment that can dial automatically from a given list of telephone numbers using algorithms to predict "when a sales agent will be available"—qualify as auto-dialers." In the FCC's 2003 Order, as the D.C. Circuit recognized, "the Commission had **made clear** that, while some predictive dialers cannot be programmed to generate random or sequential phone numbers, they still satisfy the statutory definition of an ATDS." Id., at 702. Also, "[b]y reaffirming that conclusion in its 2015 ruling, the Commission supported the notion that a device can be considered an auto-dialer even if it has no capacity itself to generate random or sequential numbers (and instead can only dial from an externally supplied set of numbers)." Id. However, the D.C. Circuit reasoned, the 2015 Order went further and espoused a *competing* view. While recognizing that *either* interpretation might be permissible, the Court reasoned that "the Commission cannot, consistent with reasoned decision-making, espouse **both** competing interpretations **in the same order**" Id. at

6

703 (emphasis added). Consequently, and because "[t]he order's lack of clarity about which functions qualify a device as an auto-dialer compounds the unreasonableness of the Commission's expansive understanding of when a device has the 'capacity' to perform the necessary functions[,]" the D.C. Circuit vacated the FCC's 2015 conflicting interpretation—leaving undisturbed the 2003 interpretation, as reaffirmed by the 2015 Order (and otherwise leaving undisturbed any order outside the 2015 Order). Id.

In addition to the D.C. Circuit's own acknowledgement that the FCC's 2003 Order remains undisturbed and binding (as with other prior orders, in that the Court **only** vacated parts of the 2015 Order), Courts within the Eleventh Circuit have already rejected arguments to the contrary. See Reyes v. BCA Fin. Servs., Inc., 312 F.Supp. 3d 1308, 1321 (S.D. Fla. May 14, 2018) ("nowhere in the D.C. Circuit's opinion are the prior FCC orders overruled. Indeed, that would have been impossible given that the time to appeal those orders had long passed"); see also Swaney v. Regions Bank, No. 2:13-cv-00544-JHE, 2018 WL 2316452, at *1 (N.D. Ala. May 22, 2018) ("the D.C. Circuit invalidated certain portions of the 2015 FCC Order, but not the portion of the Order reaffirming the FCC's 2003 determination . . ."); Maddox v. CBE Grp., Inc., 2018 WL 2327037 at *4 (N.D. Ga. May 22, 2018) ("Given the ACA Int'l decision, the Court relies on the FCC's 2003 interpretation of § 227(a)(1) to determine if Defendant's system qualifies as an ATDS. That interpretation focuses on whether a system can "dial numbers without human intervention.""); France, No. 8167CV3938T24MAP, 2018 WL 1695405 at *8 ("Pursuant to 47 U.S.C. § 227(a)(1), an ATDS is defined as 'equipment which has the capacity–(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.' Plaintiffs respond that the FCC has interpreted the statutory definition of an ATDS to include predictive dialers, which make calls from a list of numbers fed into the device. See Mais

7

v. Gulf Coast Collection Bureau, Inc., 768 F.3d 1110, 1114 (11th Cir. 2014). Plaintiffs' allegations are consistent with the use of a predictive dialer, and therefore, the Court rejects Defendant's argument on this issue.").

Recently, in Ramos v. Hopele of Fort Lauderdale, No. 17-62100-CIV-MORE, 2018 U.S. Dist. LEXIS 139947, at *16 (S.D. Fla. Aug. 16, 2018), the court concluded that "the ACA decision is binding on this Court and, further, that the ACA decision invalidated the FCC's 2015 Order that a dialing system could be classified as an autodialer under the TCPA even if it possessed a latent or potential ability to dial numbers without human intervention." Id. at *16. Further, "[t]he ACA decision does not affect the definition of an ATDS as set forth in the FCC's 2003, 2008, or 2012 Orders." Id. at *16.

Only two courts within the Eleventh Circuit have made different findings (although it is important to note, the courts did not make final rulings regarding predictive dialers.): Sessions v. Barclays Bank Delaware, Civ. Action No. 1:17-CV-01600-LMM, 2018 WL 3134439 (N.D. GA June 25, 2018) and Gonzalez v. Ocwen Loan Servicing, LLC, Civ. Action No. 5:18-cv-340-Oc-30PRL (M.D. Fla. September 5, 2018). Sessions and Gonzalez, however, are contrary to the D.C. Circuit's own explicit acknowledgement of the FCC's 2003 Order and even more specifically of the FCC's 2003 determination that the statutory definition of an ATDS includes predictive dialers. ACA International, 855 F.3d 687 at 702.

The following thirteen (13) District level Courts have ruled in favor that a predictive dialer is an ATDS and/or that the 2003 through 2012 FCC Orders are still valid:

> 1. McMillion v. Rash Curtis & Assoc., No.: 1:16-cv-03396-YGR, 2018 U.S. Dist. LEXIS 101700 (N.D. CA, June 18, 2018): The defendant argued that its dialing systems were not an ATDS because they "could not either store or produce phone numbers to be called using a random or sequential number generator" as outlined in the statutory language. Id. at *4. The District Court found that "*ACA International* invalidated only the 2015 FCC Order" noting that "the court discusses but does not rule on the validity of the

8

2003 FCC Order or the 2008 FCC Order." Id. at *7. Accordingly, the District Court upheld its previous ruling that the defendant's dialing systems were an ATDS because they "possessed 'predictive dialing' capabilities which allowed them to operate without human intervention." Id. at *4. **Attached as Exhibit "A"**

    2.    France, No. 8167CV3938T24MAP, 2018 WL 1695405 (M.D. Fla., Apr. 6, 2018): The defendant moved to dismiss the plaintiff's claim in part because plaintiff allegedly failed to set forth "sufficient facts to support their contention that [d]efendant used an ATDS" and cited to the statutory language regarding random or sequential number generation. Id. at *7-8. However, the District Court was not persuaded and rejected the defendant's argument on this issue noting that the "[p]laintiffs' allegations are consistent with the use of a predictive dialer . . . ." Id. at *8. As such, it is clear from this finding that the District Court continues to hold that a predictive dialer remained an ATDS following ACA International. **Attached as Exhibit "B"**

    3.    Ammons v. Ally Fin., Inc., No.: 3:17-cv-00505, 2018 WL 3134619 (M.D. Tenn. June 27, 2018): In perhaps the most thorough examination of the impact of ACA International on the landscape of the TCPA, the District Court determined that "beyond not expressly repudiating the 2003 FCC Ruling, 2008 FCC Ruling, and 2012 Ruling, as discussed above, ACA International supports the conclusion reached in Reyes because the D.C. Circuit explicitly acknowledged the FCC's 2003 determination that 'while some predictive dialers cannot be programmed to generate random or sequential phone numbers, they still satisfy the statutory definition of an ATDS.'" Id. at *12-13. The District Court went on to note that "applying the appropriate standard here, the primary consideration…is 'whether human intervention is required at the point in time at which [the plaintiff's] number [was] dialed.'" Id. at *15. **Attached as Exhibit "C"**

    4.    Reyes, 312 F.Supp. 3d 1308: In its Order on Summary Judgment, the District Court specifically held that "the prior FCC Orders are still binding" and that the Noble predictive dialer is an ATDS, regardless of how the numbers it dials are loaded into the dialing system, because it automatically dials these telephone numbers without human intervention at the time of dialing. Id. at *1320-21. The Court went on to observe that ACA International does not endorse one interpretation over the other and, absent an express rejection of the prior FCC Orders, the Court cannot deviate from them and impose its own interpretation of the TCPA. The Court notes "the FCC has consistently held that predictive dialers constitute ATDSs, their basic function being that **they can dial persons without human intervention** regardless of whether called numbers are generated randomly or sequentially or from a set list." Id. at *1319 (emphasis added). **Attached as Exhibit "D"**

    5.    Swaney, No.: 2:13-cv-00544-JHE, 2015 U.S. Dist. LEXIS 184571: The District Court granted plaintiff's motion for partial summary judgment finding that "the D.C. Circuit invalidated certain portions of the 2015 Order, but not the portion of the Order reaffirming the FCC's 2003 determination that, 'while some predictive dialers cannot be programmed to generate random or sequential phone numbers, they still satisfy the statutory definition of an ATDS.'" Id. at *2. Ultimately, the District Court found that the plaintiff was "entitled to partial summary judgment on the issue of whether the

9

[d]efendant's system is an ATDS under the TCPA" because the plaintiff "presented sufficient evidence to demonstrate that the system at issue has the capacity to dial numbers . . . without human intervention." Id. at *3. **Attached as Exhibit "E"**

6. Maddox, 2018 WL 2327037:  In granting the defendant's Motion for Summary Judgment, the District Court found that it was in fact bound by both the D.C. Circuit's decision in ACA International and the FCC's 2003 interpretation to determine whether the defendant's system qualified as an ATDS and that the focus of such interpretation was whether the dialing system could "dial numbers without human intervention"—more specifically, "whether the system can automatically dial a phone number." Id. at *4-5. **Attached as Exhibit "F"**

7. O'Shea v. Am. Solar Sol., No. 3:14-cv-00894-L-RBB, 2018 U.S. Dist. LEXIS 110402 (S.D. Cal. July 2, 2018):  The defendant moved to file a second motion for summary judgment, which the District Court subsequently denied holding that "the *ACA* decision is unhelpful to [d]efendant because [p]laintiff is not arguing that the ViciDial predictive dialer is an ATDS because it *could be* configured with autodialing functions.  Rather, [p]laintiff has submitted undisputed evidence that the ViciDial predictive dialer was in fact presently configured as a predictive dialer.  The *ACA* decision left intact the holding of both the FCC's 2003 and 2008 Order that an autodialer is an ATDS.  It follows that the ViciDial predictive dialer is an ATDS." Id. at *4. **Attached as Exhibit "G"**

8. Pieterson, et al. v. Wells Fargo Bank, *N.A.*, No.: 17-cv-02306-EDL (N.D. CA July 2, 2018):  While ruling on defendant's motion to stay, the District Court made a specific finding that while "ACA Int'l vacated the 2015 Declaratory Ruling but it did not clearly intend to disturb the FCC's 2003 and 2008 orders" and "[e]ven if it had vacated the FCC's earlier orders, the D.C. Circuit's ruling does not overrule Ninth Circuit precedent that bears on the question of what constitutes an ATDS . . . ." Id. at *5.  In line with the numerous opinions before it, the District Court agreed that predictive dialers remain an ATDS pursuant to the 2003 and 2008 FCC Orders. **Attached as Exhibit "H"**

9. Somogyi v. Freedom Mortg. Corp., No. 17-6546 (JBS/SJ) 2018 U.S. Dist. LEXIS 12697 (D.N.J. Aug 2, 2018) and Sieleman v. Freedom Mortg. Corp., Civil Action No. 17-13110 (JBS/JS), 2018 U.S. Dist. LEXIS 129698 (D.N.J. Aug. 2, 2018): In two different cases but related to the same defendant, the District Court of New Jersey held that in Dominguez[ v. Yahoo, Inc., 894 F.3d 116 (3d Cir. June 26, 2018)], the Third Circuit addressed the scope of the ACA International opinion for the first time. Though the majority of the analysis focused on 'the present capacity question,' the Court indicated that the 2003 FCC Order was not overruled: "In light of the D.C. Circuit's holding, we interpret the statutory definition of an autodialer as we did prior to the issuance of the 2015 [FCC Order]." See Somogyi v. Freedom Mortg. Corp., No. 17-6546 (JBS/SJ) 2018 U.S. Dist. LEXIS 12697 (D.N.J. Aug 2, 2018) **Attached as Exhibit "I"**; see also Sieleman v. Freedom Mortg. Corp., Civil Action No. 17-13110 (JBS/JS), 2018 U.S. Dist. LEXIS 129698 (D.N.J. Aug. 2, 2018) **Attached as Exhibit "J"**

10

10.     Abante Rooter and Plumbing, Inc. v. Alarm. Com., 2018 WL 3707283 (N.D. Cal. Aug. 3, 2018): The Court specifically held that ACA International only invalidated the 2015 FCC Order; the 2003 and 2008 FCC Orders are still valid. Id. at *6. The Court went on to address predictive dialers specifically and stated "the court in ACA International suggests that including a Predictive Dialer in the definition of an ATDS is a permissible interpretation of the statutory language in the TCPA." Id. at *7. Lastly the Court ruled that "even if the D.C. Circuit had vacated the 2003 and 2008 FCC Orders, ACA International does not control the Ninth Circuit's interpretation of the statutory language of the TCPA." Id. This Court specifically addressed a number of the issues Claimant anticipates will be raised in his hearing. The summation of the Court's ruling concludes that predictive dialers do qualify as an ATDS for purposes of the TCPA, before ACA International and after. **Attached as Exhibit "K"**

11.     Ramos v. Hopele of Fort Lauderdale, 2018 U.S. Dist. LEXIS 139947 (S.D. Fla. Aug. 16, 2018): "The ACA decision invalidated portions of the 2015 Order, but left intact the FC's prior orders." Id. at *15. "In 2003, the FCC issued an Order that predictive dialers fall within the meaning and statutory definition of an ATDS." Id. at *10. Finally, "[t]o summarize, the undersigned concludes that the ACA decision is binding on this Court and, further, that the ACA decision invalidated the FCC's 2015 Order that a dialing system could be classified as an autodialer under the TCPA even if it possessed a latent or potential ability to dial numbers without human intervention. The ACA decision does not affect the definition of an ATDS as set forth in the FCC's 2003, 2008, or 2012 Orders." Id. at * 16. **Attached as Exhibit "L"**

12.     Heard v. Nationstar Mortgage LLC, 2018 WL 4028116 (N.D. Ala. August, 23, 2018): "The analysis of predictive calls is more complex. Nationstar's iAssist program applies algorithms to customer information to predict when a customer is most likely to answer the phone. (Doc. 48-16, pp. 31- 32). iAssist then dials numbers for collections representatives based on these predictions. (Doc. 48- 17, pp. 18-19, 21). If iAssist detects a voice response, then the system connects the call to a representative. (Doc. 48-16, p. 54) . . . Since 2003, the FCC has regarded predictive dialers like the one used by Nationstar as automatic dialers within the meaning of the TCPA . . . [the plaintiff] withdrew his consent to be contacted on his cell phone, Nationstar's predictive calls violated the TCPA. [The plaintiff] is entitled to summary judgment on his TCPA claims for Nationstar's blast and predictive calls following the date on which [he] withdrew his consent." Id. at *4, 5, and 7. **Attached as Exhibit "M"**

13.     Glasser v. Hilton Grand Vacations Co., LLC, 2018 U.S. Dist. LEXIS 162867 (M.D. Fla., Sept 24, 2018). Even though the decision by the court was adverse to the plaintiff, the analysis concluded that predictive dialers do qualify as an ATDS. Judge Whittemore simply found that too much human intervention was involved and that the system was not a predictive dialer. "Relevant here, *ACA Int'l* left intact earlier FCC rulings that "the 'basic function' of an autodialer is to dial numbers without human intervention:" Id. at *3. Further, "[a] predictive dialer may fall within the *TCPA*'s definition of an ATDS, even though it may not "store or produce telephone numbers to be called, using a random or sequential number generator." Id. at *6. **Attached as Exhibit "N"**

11

Contrary to Defendant's assertion, the FCC's 2003 and 2008 Orders remain undisturbed (as does the FCC's 2012 Order and portions of the 2015 Order reaffirming the 2003 Order). What *is* set aside, however, is the competing view adopted in the 2015 Order. As has been demonstrated, thirteen (13) out of the nineteen (19) district courts that have addressed this specific issue have agreed with Plaintiff's position in the matter at hand. As Defendant's Motion to Dismiss is largely predicated upon a faulty premise—namely that ACA International vacated the FCC's 2003 and 2008 Orders—the conclusions drawn therefrom do not support a dismissal of Plaintiff's Complaint and its Motion to Dismiss should be denied.

    **C.**    **The D.C. Circuit Returned Conditions to the Status Quo Ante**

As Defendant correctly asserts—though predicated upon the erroneous contention that the D.C. Circuit's vacatur of aspects of the 2015 Order rendered void the Commission's 2003, 2008, and 2012 Orders in favor of a superseded 1992 interpretation—it is well settled law that when an agency rule is vacated (or portions thereof), the prior rule is reinstated (or left undisturbed) as if the vacated rule was never in effect. See Def.'s Motion to Dismiss, pg. 11 [Doc. 16]. As well, the D.C. Circuit has held that "[w]hen a court vacates an agency's rules, the vacatur restores the status quo before the invalid rule took effect and the agency 'must initiate another rule making proceeding if it would seek to confront the problem anew.'" See Environmental Defense v. Leavitt, 329 F. Supp. 2d 55, 64 (D.C. Cir. 2004) (internal citations omitted); see also Action on Smoking & Health v. C.A.B., 713 F.2d 795, 797 (D.C. Cir. 1983) (per curiam) (emphasizing that "[t]o 'vacate,' as the parties should well know, means 'to annul; to cancel or rescind; to declare, to make, or to render, void; to defeat; to deprive of force; to make of no authority or validity; to set aside,'" and that vacatur "had the effect of reinstating the rules previously in force").

    **i.**    **The statutory definition of an ATDS includes predictive dialers**

In enacting the TCPA, Congress made it "unlawful . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service, unless such call is made solely to collect a debt owed to or guaranteed by the United States." See 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." Id. at § 227(a)(1).

As discussed, not only were the FCC's 2003, 2008, and 2012 Orders undisturbed, but so too were the portion of the FCC's 2015 Order reaffirming the FCC's 2003 determination that " the Commission had made clear that, while some predictive dialers cannot be programmed to generate random or sequential numbers, they still satisfy the statutory definition of an ATDS." See ACA International, 855 F.3d 687 at 702 quoting the 2003 FCC Order. In addition to the FCC's undisturbed (and reaffirmed) 2003 Order, the FCC's 2008 Order further "affirm[ed] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of auto-dialers." See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 FCC Rcd. 559, 566 (2008). More still, the FCC's 2012 Order reiterated that the TCPA's definition of an ATDS "covers any equipment that has the specified *capacity* to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 FCC Rcd. 15391, 15399 (2012) (emphasis in original).  These FCC Orders are binding on this Court.  See Reyes, 312 F.Supp.3d 1308 at 1315 ("The Eleventh Circuit has unequivocally held

that final FCC orders are binding on district courts and that district courts 'may not determine the validity of FCC orders, including by refusing to enforce an FCC interpretation'").

Additionally, the Eleventh Circuit has also echoed this importance in rejection of any argument to the contrary. See Swaney, No. 2:13-cv-00544-JHE, 2018 WL 2316452, at *1 (holding that the D.C. Circuit invalidated certain portions of the 2015 FCC Order, but not the portion reaffirming the FCC's 2003 determination quoted above). The Eleventh Circuit further explained that "the FCC concluded that the defining characteristic of an ATDS is 'the capacity to dial numbers without human intervention'" and that "[i]n light of *ACA International*, that proposition still stands." Id. at 2. "The FCC has consistently held that predictive dialers constitute ATDSs, their basic function being that they can dial persons without human intervention regardless of whether called numbers are generated randomly or sequentially or from a set list." Id. Accordingly, the statutory definition of an ATDS includes predictive dialers, including pursuant to the FCC's undisturbed 2003, 2008, and 2012 Orders (and as reaffirmed in the FCC's 2015 Order and acknowledged by the D.C. Circuit in ACA International).

*Even if* the D.C. Circuit were to have invalided the FCC's 2003 and 2008 Orders, which it did not, such would not abrogate pre-existing Eleventh Circuit precedent. See Swaney, No. 2:13-cv-00544-JHE, 2018 WL 2316452, at *1 ("'To determine whether a dialer is a predictive dialing system, and therefore an ATDS, 'the primary consideration ... is whether human intervention is required at the point in time at which the number is dialed.'") (internal citations omitted).

Moreover, in the recent Ninth Circuit decision in Marks v. Crunch San Diego, LLC, 14-56834 (9th Cir., September 20, 2018) (**Attached as Exhibit O**), the court found that whether dialing randomly/sequentially or from a list such as a predictive dialer does, both are still considered ATDS and fall under the TCPA. In particular the Ninth Circuit stated:

> Although Congress focused on regulating the use of equipment that dialed blocks of sequential or randomly generated numbers – a common technology at that time – language in the statute indicates that equipment that made automatic calls from lists of recipients was also covered by the TCPA. This conclusion is supported by provisions in the TCPA allowing an ATDS to call selected numbers. For instance, the TCPA permitted use of autodialers for a call "made with prior express consent of the called party." To take advantage of this permitted use, an autodialer would have to dial from a list of phone numbers who had consented to such calls, rather than merely dialing a block of random or sequential numbers . . . After the FCC issued its 2015 order, Congress added language to § 227(b)(1)(A)(iii), exempting the use of an ATDS to make calls "solely to collect a debt owed to or guaranteed by the United States." Like the exception allowing the use of an autodialer to make calls "with the prior express consent of the called party," this debt collection exception demonstrates that equipment that dials from a list of individuals who owe a debt to the United States is still an ATDS but is exempted from the TCPA's strictures. Moreover, in amending this section, Congress left the definition of ATDS untouched, even though the FCC's prior orders interpreted this definition to include devices that could dial numbers from a stored list…Because we infer that Congress was aware of the existing definition of ATDS, its decision not to amend the statutory definition of ATDS to overrule the FCC's interpretation suggests Congress gave the interpretation its tacit approval . . . we conclude that the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a "random or sequential number generator," but also devices with the capacity to dial stored numbers automatically.

Id. at p. 21-23 (internal citations omitted).

Here, Plaintiff has alleged Defendant's use of a predictive dialer also violated the TCPA. As such, Plaintiff has stated a claim under the TCPA and Defendant's Motion to Dismiss should be denied.

### ii.  The TCPA includes the use of an artificial or pre-recorded voice

Assuming, *arguendo*, that the statutory definition of an ATDS did not include predictive dialers, which Plaintiff denies, any use of an artificial or pre-recorded voice would still violate the TCPA. From the plain text of the statute, each of these violations is independently actionable; a

plaintiff may recover damages for calls made "using any automatic telephone dialing system **or** an artificial **or** pre-recorded voice." See 47 U.S.C. § 227(b)(1)(A) (emphasis added); see also Ayers v. Verizon Commc'ns, Inc., No. 8:14-cv-626-T-30MAP, 2014 WL 2574543, at *1 (M.D. Fla. June 9, 2014) (holding same in consideration of the then-pending ruling in ACA International).

Therefore, even if this Court were to find that predictive dialers were not subject to the TCPA, Plaintiff has also alleged that Defendant violated the TCPA through the use of an artificial or pre-recorded voice. Consequently, Plaintiff has amply stated a claim under the TCPA and Defendant's Motion to Dismiss should be denied.

### E. The TCPA applies to calls made to collect a debt.

The intent of Congress, when it established the TCPA in 1991, was to protect consumers from the nuisance, invasion of privacy, cost, and inconvenience that autodialed and pre-recorded calls generate. Congress found that consumers consider these kinds of calls "regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." See S.REP. NO. 102-178, 1st Sess., 102nd Cong., (1991) at 2, 4–5. As Defendant correctly asserted, in the FCC's 2003 Order, the Commission departed from prior rulings and "changed its policy and issued rules applying the TCPA's restrictions even to debt-collection calls." See Def.'s Motion to Dismiss, pg. 6 [Doc. 16]. Defendant's contention, however, that the TCPA does not apply to calls made to collect a debt *for the reason that* the D.C. Circuit vacated the FCC's 2003 Order is flawed because the Court—as shown above—neither vacated nor disturbed any order beyond two of four challenged aspects of the FCC's 2015 Order.

*Even if* the D.C. Circuit were to have invalided the FCC's 2003 Order, such would not abrogate pre-existing Eleventh Circuit precedent. Ayers v. Verizon Commc'ns, Inc., No. 8:14-cv-626-T-30MAP, 2014 WL 2574543, at *1 (M.D. Fla. June 9, 2014) (preemptively rejecting any

notion that the D.C. Circuit's ruling may somehow render uncertain whether the TCPA applies to calls made to collect a debt); Patterson v. Ally Financial, Inc., No. 3:16-cv-1592-J-32JBT, 2018 WL 647438, at *3 n.5 (M.D. Fla. Jan. 31, 2018) (stating "this applies to all types of calls, including those for debt collection").  In Murray v. Diversified Consultants, Inc., No. 8:13-cv-3074-T-30AEP, 2014 WL 2574042, at *1 (M.D. Fla. June 9, 2014), the court explained that the Eleventh Circuit already addressed this issue:

> The . . . issue regarding whether the TCPA applies to non-telemarketing calls such as debt collection calls has already been addressed by the Eleventh Circuit in Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242 (11th Cir. 2014).  The Eleventh Circuit's holding in Osorio makes clear that the distinction related to non-telemarketing calls does not apply to calls made to cellular phones. Indeed, the provisions of the TCPA that apply to autodialed calls to cellular phones and the exemptions promulgated by the FCC demonstrate that DCI's argument with respect to whether the TCPA applies to non-telemarketing calls is without merit. Plaintiff's TCPA claim is brought under 47 U.S.C. § 227(b)(1)(A)(iii), which bans the use of "any automated telephone dialing system" to call "any ... cellular telephone service." The only exemptions in the TCPA that apply to cellular phones are for emergency calls and calls made with prior express consent. See id., 47 C.F.R. § 64.1200(a)(1)(iii). "Unlike the exemptions that apply exclusively to residential lines, there is no established business relationship or debt collection exemption that applies to autodialed calls made to cellular phones." Fenescey v. Diversified Consultants, Inc., 2014 WL 2526571, at *2 (M.D. Pa. June 4. 2014) (denying a nearly identical motion to stay filed by DCI). Thus, DCI's argument with respect to this issue is without merit.

Id. at *1.

Further, despite the Eleventh Circuit rejecting the argument now advanced by Defendant, it is otherwise established law that the only debt collection calls exempt from the TCPA are those "made solely to collect a debt owed to or guaranteed by the United States." See 47 U.S.C. § 227(b)(1)(A), as amended by the Budget Act § 301(1)(A) by Congress on November 2, 2015. When Congress expressly exempted certain debt collection calls, as discussed above, Congress

affirmed that the TCPA applied to all other debt collection calls. As the Ninth Circuit detailed in Marks:

> We "presume that when Congress amends a statute, it is knowledgeable about judicial decisions interpreting the prior legislation." Porter v. Bd. of Trs. of Manhattan Beach Unified Sch. Dist., 307 F.3d 1064, 1072 (9th Cir. 2002). Because we infer that Congress was aware of the existing definition of ATDS, its decision not to amend the statutory definition of ATDS to overrule the FCC's interpretation suggests Congress gave the interpretation its tacit approval. See Lorillard v. Pons, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.").

Id. at 22.

It is therefore logical to infer that Congress was aware of the regulation of debt collection calls under the TCPA and affirmed such regulation with the re-enactment in 2015. Furthermore, in 2015, as noted in Marks, Congress added language to the TCPA to **exempt** the government from the TCPA when calling to collect a debt. Specifically:

> Congress's 2015 amended to the TCPA provides additional information about Congress's views on the scope of the definition of ATDS. After the FCC issued its 2015 order, Congress added language to § 227(b)(1)(A)(iii) **exempting** the use of an ATDS to make calls "**solely to collect a debt owed to or guaranteed by the United States**." Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301, 129 Stat. 584, 588 (codified at 47 U.S.C. § 227(b)(1)(A)(iii)).

Id. at 21-22 (emphasis added).

The obvious question of course is: *Why would the government need to exempt itself from the TCPA when making debt collection calls if the TCPA does not apply to debt collection calls?* The legislature clearly chose to exclude calls involving a particular kind of debt, namely ones owed to or guaranteed by the United States. This evidences a clear intent to include all calls attempting to collect any other type of debt. By excluding only a specific type of debt, the obvious

18

consequence is that the TCPA applies to calls placed to collect debts not within the enumerated exemption.

Here, it is undisputed, at this stage, that the debt for which Defendant placed its calls is neither owed to, nor guaranteed by, the United States. Therefore, Defendant's Motion to Dismiss should be denied.

## IV. CONCLUSION

As shown, Plaintiff has sufficiently stated a claim under the TCPA and Defendant is on fair notice of the same. Defendant's argument that the D.C. Circuit invalidated any order beyond portions of the 2015 Order is without merit, and the FCC's 2003, 2008, and 2012 Orders (and portions of the 2015 Order) remain undisturbed and binding on this Court. Accordingly, the TCPA *still* applies to calls made to collect a debt and the statutory definition of an ATDS *still* includes predictive dialers. Accepting Plaintiff's allegations as true, and construing them in the light most favorable to Plaintiff, this Court should find that Plaintiff has set forth sufficient factual allegations to allow a court to draw a reasonable inference that Defendant has violated the TCPA. Accordingly, Defendant's Motion to Dismiss must be denied. Finally, should the Court be inclined to grant Defendant's request regarding Plaintiff's failure to state a claim, Plaintiff would request leave to file an amended complaint.

Respectfully submitted,

**LAW OFFICES OF RICK G. BANNON, P.A.**

/s/ *G. Tyler Bannon*
**G. Tyler Bannon, Esq., FBN 0105718**
**Lead Trial Counsel**
1901 Dr. M.L. King Jr. Street N.
St. Petersburg, FL 33704
Phone: (727) 896-4455
Fax: (727) 895-1312
tyler@rbannonlaw.com
jbannon@rbannonlaw.com

*Counsel for Plaintiff*

and

**CONSUMER LAW ATTORNEYS CORP.**

/s/ *Young Kim*
**Young Kim, Esq., FBN 122202**
2325 Ulmerton Rd., Ste. 16
Clearwater, FL 33762
Phone: (877) 241-2200
ykim@consumerlawattorneys.com
jguzman@consumerlawattorneys.com
service@consumerlawattorneys.com
*Co-counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed and served a true and correct copy of the foregoing via CM/ECF this 4th day of October 2018 to:

Edrei G. Swanson, Esq.
Hunton Andrews Kurth LLP
1111 Brickell Ave., Ste. 2500
Miami, FL 33131
eswanson@huntonak.com
*Counsel for Defendant*

/s/ *G. Tyler Bannon*
Attorney